UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PAN AMERICAN LIFE INSURANCE COMPANY | CIVIL ACTION |
| VERSUS | NO. 13-5027 |
| LOUISIANA ACQUISITIONS CORP., ET AL. | SECTION "A" (3) |

**ORDER**

Before the Court are the Motion to Compel [Doc. #117], the Motion to Compel [Doc. #123], and Defendants' Motion to Compel [Doc. #140]. The Court heard oral argument on all three motions. Having reviewed the motions, the oppositions, the numerous replies, and the case law, the Court rules as follows.

**I.      Background**

The complaint alleges as follows. This is a diversity action for breach of contract, breaches of fiduciary duties owed between partners, fraud, conversion, civil conspiracy, deceptive or unfair trade practices, and unjust enrichment that arises out of defendants' operation and management of, and relationship to, the New Orleans Inter-Continental Hotel located in downtown New Orleans.

Pan American Life Insurance Company ("PALIC") and Louisiana Acquisitions Corp. ("LAC") formed a Louisiana partnership called PANACON on June 4, 1981, for the purpose of designing, building, and operating a luxury hotel in New Orleans. PALIC owned a two-thirds

interest in PANACON, and LAC owned the other one-third. The hotel opened in 1983 under the Inter-Continental brand name. LAC is a wholly-owned subsidiary of Inter-Continental Hotels Corp. ("IHC"), and the two entities operate as commonly-controlled business entities.

The PANACON partnership entered into an Operating and Management Agreement ("the Management Agreement") with IHC to manage the hotel. On September 15, 1983, LAC became manager of the hotel pursuant to an assignment from IHC. PALIC claims that over the years, LAC and IHC used the Management Agreement as a lucrative vehicle to double-charge or over-charge PANACON for services to the detriment of the partnership and PALIC, while garnering significant profits for defendants. PALIC contends that defendants failed to perform certain obligations owed under the Management Agreement, which inured to defendants' financial gain but impeded the hotel's ability to compete as a luxury hotel. PALIC also alleges that defendants surreptitiously competed against PANACON by operating other hotels in the local market. Thus, according to PALIC, LAC and IHC maximized their profits not through their one-third ownership of PANACON but rather by abusing the hotel Management Agreement – a scheme that produced profits regardless of whether the hotel itself was profitable. PALIC complains that defendants' strategy resulted in PALIC receiving no profits on its investment for years at a time.

In 2005, PALIC began to take steps to sell the underperforming hotel. PALIC alleges a plethora of acts that defendants are accused of committing in order to thwart the sale of the hotel, which again was allegedly losing money for PALIC but proving quite profitable to defendants.

Before the January 2013 sale of the hotel, PALIC became aware of some of the very conduct by defendants about which it complains in this action. According to PALIC, defendants demanded that PANACON and PALIC execute two documents, a Side-Letter Agreement and a Voluntary

Termination Agreement – documents that PALIC describes as including "a purported release" of PALIC's claims for breaches of the Management Agreement and fraud – as a condition for their agreement to the pending sale of the hotel. These documents were executed in December 2012. PALIC contends that defendants insisted on the releases because defendants knew that they had been discovered in their fraudulent scheme and that PALIC was forced to agree to the releases because of economic duress in light of its eagerness to finally sell the unprofitable hotel.

PALIC then initiated this action, individually and as a partner in PANACON, against LAC and IHC in July 2013.  In its 149-paragraph complaint, PALIC alleges causes of action for breach of contract (Count 1), breach of partnership and fiduciary duties and good faith obligations (Count 2), fraud (Count 3), civil conspiracy (Count 4), conversion (Count 5), unfair trade practices (Count 6), and alternatively, unjust enrichment (Count 7).

## II.     The Motion to Compel [Doc. #117]

### A.     The Parties' Contentions

#### 1.     The Motion to Compel

PALIC asks the Court to compel the deposition or Richard Solomons, the CEO of InterContinental Hotels Group, PLC ("IHG") within 60 days.  Defendants refuse to produce Solomons on the ground that he is the CEO, and that PALIC seeks his deposition only to harass him. PALIC notes that Solomons was the CFO and Head of Commercial development of IHG at the time of the sale here, and the evidence reveals that he was intimately involved in the sale.  PALIC also asks the Court to order the production of Solomons' ESI, which defendants have unilaterally withheld.  Defendants now maintain that PALIC has waived its right to Solomons' ESI because it failed to object to defendants' arbitrary two-day deadline, imposed unilaterally when they

3

propounded on PALIC their e-discovery protocol.

PALIC argues that high-level executives are subject to depositions when they have personal knowledge of the facts relevant to the lawsuit. Again noting that Solomons was CFO at the time of the sale here, PALIC maintains that he participated directly in the operation and management of the hotel. PALIC attaches an e-mail to its motion to demonstrate that Solomons was directly involved in the sale. PALIC contends that the Apex doctrine is inapplicable here because this is a commercial dispute in which the executives of both parties have personal knowledge. PALIC notes that defendants have noticed the depositions of its CEO and Chairman of the Board, Jose Suquet, and other high-ranking executives. And while defendants have now stated that they may produce Solomons after they depose PALIC's executives, PALIC argues that this is nothing more than a delay tactic. Citing case law and the federal rules, PALIC contends that parties are not allowed to unilaterally schedule the timing of discovery. PALIC notes that defendants must move for a protective order if they dispute the timing of discovery, and defendants have not done so here.

PALIC listed Solomons as an e-custodian in its discovery protocol, but defendants unilaterally struck him after PALIC failed to formally object. PALIC maintains that the production of Solomons' ESI will not delay discovery or trial, and there is no financial burden on defendants. PALIC asks the Court to order defendants to search Solomons' ESI in the same way that defendants asked it to search its ESI and to produce the material within 30 days.

       **2.**    **The Opposition**

Defendants note that they are both distant subsidiaries of IHG (of which Solomons is CEO), which is not a party to the lawsuit. They note that Solomons is not a party to the lawsuit, nor employed by a defendant; he lives in the United Kingdom; and PALIC did not serve a subpoena on

him, nor did it follow Hague Convention protocol. And PALIC can not force him to come to New Orleans because he lives more than 100 miles from the Court. Defendants argue that even had PALIC served Solomons with a subpoena, this Court can not enforce it because enforcement will be directed to the court of issuance.

Citing the Apex doctrine, defendants contend that courts do not allow the deposition of high-ranking employees unless said employee has first-hand, non-repetitive knowledge of the facts, and the party seeking the deposition has exhausted other, less intrusive means. Solomons is not a high-ranking officer, however, within either defendant but of the global parent.

Defendants have agreed to secure Solomons' deposition if, at the end of all of the other depositions, it appears that he has some unique, relevant knowledge that was not attainable from others. With regard to the deposition of Suquet, defendants note that he is the CEO of a party to this lawsuit, is a main character in PALIC's complaint, and produced 656 documents of which he was the custodian and 2,665 documents in which his name appeared. This is very different from Solomons' position with regard to the sale. Defendants note that they are producing six other high-ranking executives for depositions even though the executives may no longer work for them.

Defendants maintain that Solomons has limited knowledge of the facts here and authored only one e-mail. They also contend that any knowledge that he possessed can be addressed through less intrusive means, such as interrogatories or the depositions of others involved in the operation and sale of the hotel.

Defendants argue that PALIC must demonstrate that the information that Solomons possesses is not only relevant but superior or unique. Here, they note that the e-mail demonstrates that Solomons had not even been to the hotel in years.

Defendants contend that this Court has already reviewed the ESI protocol in this lawsuit, and they refuse to re-open this issue. The parties already held a discovery conference on this issue and mutually agreed on the protocol. It included Solomons as a search term but not as an ESI custodian. Defendants heard nothing from PALIC after twice contacting it after it had produced its ESI protocol. Defendants thus went ahead and performed a massive search and produced documents based on the protocol as propounded.

Defendants maintain that all documents related to Solomos' involvement with the hotel have been reviewed and produced. Defendants included Solomons name in their search terms.[1]

### B.     Law and Analysis

For the following reasons, the Court denies the motion. First, there is nothing before the Court to compel with regard to the deposition of Solomons. PALIC has served no subpoena on Solomons nor attempted to comply with the Hague Convention. While PALIC contends that it need not serve a subpoena on Solomons because he was an officer, director, or managing agent of a party (*i.e.*, CFO and Head of Commercial Development of IHG) at the time of the sale, that argument misses the mark. It is axiomatic that foreign nationals living abroad are not subject to subpoena service outside of the United States and can not be compelled to give testimony under Rule 45. *Aristocrat Leisure Ltd. v. Deustche Bank Trust Co. Americas*, 262 F.R.D. 293, 305 (S.D.N.Y. 2009).

Second, the Court finds that the depositions of the other high-ranking executives should occur first. The Court recognizes that there is no Fifth Circuit law that applies the "Apex doctrine" to strictly prohibit the depositions of high-level executives, and that federal courts have permitted

---

[1] The parties also filed post-hearing memoranda, the arguments of which are not outlined here.

the depositions of high-level executives when conduct and knowledge at the highest corporate levels of the defendant are relevant in the case. *Gauthier v. Union Pac. R.R. Co.*, Civ. A. No. 1:07-CV-12, 2008 WL 2467016 (E.D. Tex. June 18, 2008); *see also In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 205 F.R.D. 535, 536 (S.D. Ind. 2002). Generally, however, to determine whether to permit the deposition of a high-level executive, federal courts have considered the following factors: (1) whether the moving party can demonstrate that the executive possessed personal or superior and unique knowledge; and (2) whether the information could be obtained from lower-level employees or through less burdensome means, such as written interrogatories. *See Turner v. Novartis Pharms.*, Civ. A. No. 10-0175, 2010 WL 5055828, at *4 (E.D. La. Dec. 2, 2010); *Baine v. Gen. Motors Corp.*, 141 F.R.D 332, 334 (S.D. Ala. 1991). Here, PALIC has not demonstrated that Solomons possesses personal or superior or unique knowledge of the lawsuit, or even of the sale. One e-mail can not meet this burden. And PALIC wholly fails to explain why it can not pursue a deposition through interrogatories or why it can not wait until after the six depositions of the other high-ranking executives to determine whether they will need any further information from Solomons.

The Court also holds that the motion is moot as to the ESI documents given that defendants used Solomons as a search term. It is far from clear that any more relevant documents would surface by searching for him again. If all relevant documents related to Solomons have been produced, it would be a financial waste of time for defendants to re-search for him as an ESI custodian, when they aver before the Court – under a penalty of contempt and sanctions – that they have already done so.

## III.     The Motion to Compel [Doc. #123]

In this motion, PALIC challenges the sufficiency of many of defendants' responses to its discovery requests.

With regard to Requests for Production ("RFP") Nos. 8, 44 and 45 (First Set), the motion is moot as noted by the parties at the oral hearing.

The Court finds that defendants have satisfied their obligations – at this time – with regard to the following requests: **First Set**: RFP Nos. 7, 9, 10, 20, 23, 47, 51, 52, 70, 81-84, and **Second Set**: Interrogatory ("Int.") Nos. 2, 3, 6, and 13-16. Defendants averred to the Court in their pleadings and at the oral hearing – under penalty of contempt and sanctions – that all responsive documents revealed through their ESI search have been produced. This Court can not compel defendant to produce what they do not have. Should further responsive documents be found, however, the Court reminds defendants of their continuing obligation to supplement under the federal rules.

With regard to Int. Nos. 1, 4, and 5 (Second Set), RFP No. 2 (Third Set) and RFP No. 1 (Third Set), the motion is denied. Defendants' dealings with other hotels and hotel owners is simply not reasonably calculated to lead to the discovery of admissible evidence. Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, a party is only entitled to the production of documents that are "relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1) (emphasis added). "[T]he determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action." Berk-Cohen Assocs., LLC. v. Landmark American Ins. Co., 2009 WL 2024014, at * 1 (E.D. La. July 9, 2009) (citing Fed. R. Civ. P. 26(b)(1) Advisory Committee's Note, 2000 amendments). This is a discrete dispute between three sophisticated parties who negotiated agreements amongst themselves and not with other third

parties. Whether defendants negotiated releases with other hotels or hotel owners will not lead to the discovery of admissible evidence as to the claims asserted by PALIC in this lawsuit. While PALIC argues that these requests are relevant to defendants' modus operandi as to its alleged mismanagement of hotels, the Court can not fathom how, for example, an alleged release with a former hotel owner will lead to the discovery of admissible evidence as to the release executed by the parties here. Indeed, modus operandi evidence is only relevant to establish identity based on a particular "signature" pattern of behavior of a party. Black's Law Dictionary 1026 (8th ed. 2004). When the identity of a party is not in question, as is the case here, modus operandi evidence is not relevant. *Royal Bahamian Assoc., Inc. v. QBE Ins. Corp.*, 745 F. Supp. 2d 1380, 1384 (S.D. Fla. Oct. 25, 2010) ("There is no dispute over identity in this case and therefore, even if the use of these affirmative defenses could be considered a modus operandi, it would be irrelevant in this case."); *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1046 (10th Cir. 2005) ("[P]roof of a 'modus operandi' is only relevant when there is an issue regarding the defendant's identity.").

**IV.     Defendants' Motion to Compel**

    **A.     The Parties' Contentions**

        **1.     The Motion to Compel**

This motion concerns a privilege dispute between the parties. In essence, defendants seek documents from PALIC and its counsel related to counsel's representation of PANACON. Defendants note that in July 2012, in-house counsel for PALIC sent an e-mail to in-house counsel for LAC, in which he stated that PALIC, as the majority partner of PANACON, had unilaterally chosen Fowler Rodriguez ("FR") to represent it during the sale of the hotel. LAC did not consent to the representation, and PALIC never obtained a waiver of any conflict from it. Defendants

9

contend that Model Rule of Professional Conduct 1.7 addresses the risk on common representation and requires informed consent, in writing, of any waiver. Defendants also maintain that Rule 1.7 provides that if litigation eventuates between the clients, no privilege protects any communications between counsel and the clients.

Defendants note that according to the privilege log, PALIC was discussing potential legal action against LAC only 13 days after it undertook the common representation, and PALIC has admitted that it has always been adverse to LAC.

Defendants argue that this Court's November 10, 2014 order rejected PALIC's privilege argument and ordered the production of all documents. Defendants contend that PALIC has failed to comply with the order. Defendants maintain that the privilege log fails to describe with specificity why FR is withholding documents as privileged.

Because FR did not maintain separate files as to PALIC and PANACON, defendants requested FR's invoices so that a description of the work could be compared to the documents produced and the privilege log. PALIC refused, even though defendants paid a portion of the invoices as a partner in PANACON. Defendants maintain that the billing records are relevant to resolve the privilege dispute. They contend that they constitute partnership property, and this Court has already ordered them to be produced. They argue that the billing invoices will reveal what entity was being billed and what services were provided.

When it received the privilege log, defendants highlighted in yellow all communications with an FR attorney. Defendants maintain the PALIC asserts that the privilege applies to every communication between it and FR. Defendants argue that this is troublesome when the communication topics concern the sale, the Management Agreement, and the Voluntary Termination

Agreement. Defendants ask the Court to no longer distinguish between communications between FR and PALIC and FR and PANACON because FR did not distinguish between its representation of the entities.

Defendants argue that PALIC has waived any privilege as to the communications because it has placed them directly at issue in this litigation, *i.e.*, PALIC may not shield the documents by claiming privilege and then use them as a sword when necessary.

If the Court disagrees with defendants, they ask the Court to order PALIC to redo its privilege log to detail the basis for any privilege. And they ask the Court to order PALIC to produce now any documents that relate to the sale, the Management Agreement, and the Voluntary Termination Agreement as PANACON documents.

### 2. The Opposition

PALIC contends that counsel has produced all documents relative to FR's representation of PANACON. It further notes that it produced a detailed privilege log as to its representation of PALIC and that it produced previously-withheld documents from its earlier production after further review.

PALIC argues that defendants were well aware of its dual representation during the sale. It maintains that not one defendant – even LAC – objected.

PALIC contends that Rule 1.7 is inapplicable because there was never a conflict between it and PANACON. PALIC asserts that defendants were the parties with a conflict of interest as a partner in the hotel ownership and also the management company operating the hotel for the partnership. PALIC argues that if there is any conflict of interest, defendants created it by their ongoing behavior in 2012.

11

PALIC notes that FR only represented PANACON as to the proposed listing and sale of the hotel. FR produced all of these documents. PALIC notes that FR produced 331 documents that represent communications between it and FR, despite defendants' assertion to the contrary that it has withheld all documents between it and FR. PALIC maintains that it withheld only 22 documents as to the sale of the hotel, and these documents represent FR's advice to it regarding defendants' efforts to obstruct the sale. With regard to the Management Agreement and the Voluntary Termination Agreement, PALIC contends that FR withheld only those documents related to legal advice to it. Because defendants forced PALIC to enter the agreements, it argues, PALIC had to retain legal counsel to protect its two-thirds interest in PANACON. PALIC maintains that defendants are not clients of FR and are thus not entitled to the communications between it and FR.

Citing case law, PALIC contends that the fact that an attorney represents a corporation does not make that attorney counsel to the officers and directors of the corporation. It notes that PANACON is a separate entity from PALIC and LAC.

PALIC maintains that its privilege log is sufficient. It lists the item number, date, party from, recipient, parties copied, document type, record type, privilege claimed, and the reason for the privilege. PALIC argues that because defendants have lodged only a general objection, it can not evaluate the basis for any specific objection to a privilege log entry.

### 3. Defendants' Reply

Defendants maintain that this Court has already rejected all of the arguments that PALIC advances in its opposition. They contend that FR's invoices for PANACON are not privileged. LAC paid one-third of the invoices for FR, and the invoices are the best evidence of the scope of the work performed by FR on behalf of PANACON. Defendants assert that the billing invoices are not

even listed in the privilege log, or, if they are, they are so inadequately described that defendants can not identity them.

Defendants argue that the resolution of the motion to compel does not hinge on why, when, or how they became adverse to PALIC.

Defendants contend that even if a privilege exists, PALIC has waived it by claiming duress and thus placing its mental state at issue during the negotiation of the sale of the hotel. They maintain that PALIC has put its entire deliberative process at issue and thus can not claim privilege with regard to communications between it and FR.

**B.      Law and Analysis**

This Court has already addressed this issue in detail. In its earlier order on a motion to compel this Court stated:

> For the following reasons, the Court grants the motion and orders PALIC to completely respond to defendants' discovery requests, turn over all documents that relate to the representation of PANACON, and produce a detailed privilege log **no later than fourteen (14) days from the date of this Order**. The Court finds that LAC, as a partner in PANACON, is entitled to discover those documents and communications from PANACON's counsel that reflect partnership matters. The following language supports this Court's conclusion:
>> We begin by stating that a member of a partnership is entitled to disclosure of communications to and from an attorney representing the partnership in connection with partnership matters. *Garner*, supra, 1103. *See also Marcuse v. Kramer*, 5 Orleans Appeals 247 (La. App. 1908). Because of the relationship existing between partners in the creation of a partnership, which we view as stronger than that existing between stockholder and corporation, we conclude that the bar preventing disclosure of attorney communications, as between partners, is not simply relaxed, but non-existent. Partners therefore need not establish "cause" to discover privileged communications of an attorney in matters in which the partnership, of which they are members, is the client. (Emphasis added].
>> . . . .
>> Additionally, disclosure is required of any document, presently or formerly in the possession of the Equity defendants,

13

> which formed part of, or would be considered records of the respective partnership whether or not defendants presently claim an attorney client privilege as to said documents. La. Rev. Civil Code, Art. 2813.
>
> > The Anderson law firm was hired by the Equity defendants to represent the Courtside Partnership in bankruptcy proceedings. Under no stretch of the imagination could Equity be considered the client in that legal situation. We find that the Courtside Partnership was the client and the Courtside plaintiffs are entitled to disclosure of all documents and communications between the Anderson firm and any other person connected with those proceedings.
>
> *Abbott v. The Equity Group*, Civ. A. No. 86-4186, 1988 WL 86826 (E.D. La. Aug. 10, 1988). While the Court recognizes that the factual circumstances of *Abbot* are not identical to those here, the aforementioned language supports the Court's conclusion that LAC, as a partner in PANACON, is entitled to documents and communications that concern PANACON matters. There is no case law to support PALIC's arguments that it, as a partner in PANACON, is entitled to said documents, but LAC, as a partner, is not. LAC was a partner in PANACON and is entitled to the documents related to the representation. One final caveat: Should FR's review reveal documents and communications that pertain only to PALIC – and not PANACON – and FR contends that said communication or document is protected by a privilege, FR may withhold that document or communication and include it in the privilege log.

[Doc. #97 at pp. 8-9].

This language applies here. In the first instance, the Court takes no issue with PALIC's privilege log and finds that it satisfies the case law and the federal rules. Should defendants wish to challenge a specific entry, they may do so, but a general objection – as is the one here – will not suffice.

Moreover, PALIC represents to this Court that it has produced all of the documents related to its representation of PANACON (apart from the invoices). If it has indeed done so – as it has represented to the Court under penalty of contempt and sanctions – it has satisfied this Court's order. Should PALIC uncover further, responsive documents, however, the Court reminds it of its continuing obligation to supplement under the federal rules.

With regard to the invoices, the Court grants the motion. PALIC shall produce the disputed invoices to defendants **no later than fourteen (14) days from the date of this Order**. The invoices are partnership property, and, as noted above, LAC owned one-third and was a partner of PANACON. They are thus entitled to view the invoices, having paid one-third of any fees paid by PANACON. As before, however, should FR's review of the invoices reveal privileged communications that pertain only to PALIC – and not PANACON – and FR contends that said communication or document is protected by a privilege, FR may withhold and/or redact any such invoice or communication and include it in a supplemental privilege log, which shall be produced in accordance with the above date.

## IV. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that the Motion to Compel [Doc. #117] is DENIED.

**IT IS FURTHER ORDERED** that the Motion to Compel [Doc. #123] is DISMISSED AS MOOT in part and DENIED in part as outlined above.

**IT IS FURTHER ORDERED** that Defendants' Motion to Compel [Doc. #140] is GRANTED IN PART and DENIED IN PART as outlined above.[2]

New Orleans, Louisiana, this 9th day of July, 2015.

DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE

---

[2] The Court declines to award attorneys' fees and costs at this time given the mixed nature of the ruling on the third motion.