UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PAN AMERICAN LIFE INSURANCE CO., INDIVIDUALLY AND AS A PARTNER IN PANACON | CIVIL ACTION |
| VERSUS | NO: 13-5027 |
| LOUISIANA ACQUISITIONS CORP. AND INTER-CONTINENTAL HOTELS CORP. | SECTION: "A" (3) |

## ORDER AND REASONS

The following motion is before the Court: **Motion for Partial Summary Judgment Barring Liability for Any Act or Omission That Occurred Prior to July 9, 2010 (Rec. Doc. 163)** filed by defendants Louisiana Acquisitions Corp. and Inter-Continental Hotels Corp. (collectively "Defendants"). Plaintiff Pan American Life Insurance Co. ("PALIC") opposes the motion. The motion is before the Court on the briefs without oral argument.[1]  For the reasons that follow, the motion is GRANTED IN PART AND DENIED IN PART.

**I.**

This is a diversity action for breach of contract, breaches of fiduciary duties owed between partners, fraud, conversion, civil conspiracy, deceptive or unfair trade

---

[1] Defendants have requested oral argument but the issues presented by their motion are thoroughly briefed in their memoranda and do not require additional argument.

practices, and unjust enrichment arising out of Defendants' operation and management of, and relationship to, the New Orleans Inter-Continental Hotel located in downtown New Orleans. (Rec. Doc. 17, SSAC ¶ 1).

PALIC and Louisiana Acquisitions Corp. ("LAC") formed a Louisiana partnership called PANACON on June 4, 1981, for the purpose of designing, building, and operating a luxury hotel in New Orleans. (SSAC ¶ 9). PALIC owned a two-thirds (2/3) interest in PANACON and LAC owned the other one-third (1/3). (*Id.* ¶ 10). The hotel opened in 1983 under the Inter-Continental brand name. *(Id.* ¶ 12). LAC is a wholly-owned subsidiary of Inter-Continental Hotels Corp. ("IHC") and the two entities operate as commonly controlled business entities. (*Id.* ¶¶ 4-5).

The PANACON partnership entered into an Operating and Management Agreement ("the Management Agreement") with IHC to manage the hotel. (SSAC ¶ 13). On September 15, 1983, LAC became manager of the hotel pursuant to an assignment from IHC. (*Id.* ¶ 14). PALIC claims that over the years LAC and IHC used the Management Agreement as a lucrative vehicle to double-charge or over-charge PANACON for services to the detriment of the partnership and PALIC, while garnering significant profits for Defendants. PALIC contends that Defendants failed to perform certain obligations owed under the Management Agreement, which inured to Defendants' financial gain but hurt the hotel's ability to compete as a luxury hotel. PALIC also alleges that Defendants surreptitiously competed against PANACON by operating other hotels in the local market. Thus, according to PALIC, LAC and IHC maximized their profits not through their one-third ownership of PANACON but rather by

abusing the hotel Management Agreement—a scheme that produced profits regardless of whether the hotel itself was profitable. PALIC complains that Defendants' strategy resulted in PALIC receiving no profits on its investment for years at a time.

In 2005, PALIC began to take steps to sell the underperforming hotel. (SSAC ¶ 40).   PALIC alleges a plethora of acts that Defendants are accused of committing in order to thwart the sale of the hotel, which again was allegedly losing money for PALIC but proving quite profitable to Defendants.

Prior to the January 2013 sale of the hotel, PALIC became aware of some of the very conduct by Defendants that PALIC is complaining about in this action. (SSAC ¶ 18). According to PALIC, Defendants demanded that PANACON and PALIC execute two documents, a Side-Letter Agreement (Rec. Doc. 24-4, Exhibit C) and a Voluntary Termination Agreement (Rec. Doc. 24-5, Exhibit D)—documents that PALIC describes as including "a purported release" of PALIC's claims for breaches of the Management Agreement and fraud (*Id.* ¶¶ 19-20)—as a condition for their agreement to the pending sale of the hotel. These documents were executed in December 2012. PALIC contends that Defendants insisted on the releases because Defendants knew that they had been discovered in their fraudulent scheme and that PALIC was forced to agree to the releases because of economic duress in light of its eagerness to finally sell the unprofitable hotel. (*Id.* ¶¶ 65, 75).

PALIC initiated this action, individually and as a partner in PANACON, against LAC and IHC on July 9, 2013, with a 149 paragraph complaint. Defendants initially responded with a Rule 12(b)(6) Motion to Dismiss (Rec. Doc. 24). On December 20,

2013, the Court granted in part and denied in part that motion, concluding that most of Defendants' arguments could not be resolved on the pleadings (Rec. Doc. 37, Order and Reasons). PALIC ostensibly has seven remaining claims in this lawsuit: breach of contract (Count I), breach of fiduciary duty (Count II), fraud (Count III), civil conspiracy (Count IV), conversion (Count V), unfair trade practices (Count VI), unjust enrichment (Count VII), and alter ego (Count VIII).

Substantial fact discovery has been conducted. The record reflects that discovery has not proceeded smoothly. Counsel have appeared for motion hearings before the magistrate judge on eight separate occasions (Rec. Docs. 93, 116, 124, 144, 151, 214, 229, 271). Counsel have appeared in this Court's chambers on three separate occasions (Rec. Docs. 27, 109, 223), and have participated in a principals' conference (Rec. Doc. 43). The magistrate judge conducted a settlement conference last fall and the case did not settle. (Rec. Doc. 233).

In June 2015, Defendants filed the instant motion for partial summary judgment. Additional fact discovery ensued and it is the Court's understanding that it is nearly complete. This motion was submitted on February 23, 2016, with the filing of Defendants' reply.

## II.

Defendants seek partial summary judgment barring liability for any acts or omissions occurring prior to July 9, 2010, which is three years prior to the date that PALIC filed this action on July 9, 2013. Defendants' motion is grounded on La. R.S. § 12:1502, which they contend includes a three-year "peremptive" period that applies to all of

PALIC's remaining claims, none of which are grounded on breach of contract. [2] Defendants argue that the three-year "peremptive" period can be applied as a matter of law without consideration of knowledge, notice, or other fact-based inquiries. According to Defendants, PALIC's lawsuit is largely directed to unsubstantiated allegations of wrongdoing dating back over a decade.

In opposition, PALIC argues that Defendants are attempting to improperly expand the reach of La. R.S. § 12:1502 to cover causes of action that do not fall within its purview. PALIC argues that the statute only affects claims for breach of duties owed by a partner, and since IHC was not a partner in PANACON, none of the claims brought directly against this entity would be perempted. PALIC also argues that its unfair trade practices claims are subject to the more specific and separate prescriptive period found in La. R.S. § 51:1409.[3]

Chapter 24 of Title 12 is called Prescriptive Periods Applicable to Business

---

[2] PALIC's Count I breach of contract claim is not at issue in this motion for partial summary judgment. Count I is the subject of another pending motion for partial summary judgment (Rec. Doc. 153) that will be addressed separately. Defendants recognize that La. R.S. § 12:1502 does not govern the Count I breach of contract claim. (Rec. Doc. 258, Reply at 6).

[3] PALIC also argues that Defendants' motion is deficient because Defendants do not explain or support with evidence which part of which claims they seek to have declared prescribed or perempted. (Rec. Doc. 240, Opposition at 1). As the Court appreciates Defendants' motion, Defendants are not contending at this juncture that the three-year period of § 12:1502 forecloses *in toto* any of the causes of action. Rather, because PALIC's factual support for its causes of action includes events that occurred well before the three-year mark, Defendants seek a ruling that these pre-July 9, 2010 acts or omissions are not actionable as a matter of law. That PALIC contends that Defendants' acts and omissions were continuous in nature and continued up until the hotel was sold in 2013 is beside the point. Even if a cause of action is not completely foreclosed due to prescription, any potential recovery for that cause of action may be significantly impacted if liability and damages cannot be based on pre-July 9, 2010 events.

Organizations. (emphasis added). Louisiana Revised Statute § 12:1502, entitled Actions Against Persons Who Control Business Organizations, provides in relevant part:

* * * *

> C. No action for damages against any [officer, director, shareholder, member, manager, general partner, limited partner, managing partner, or other person similarly situated] for an unlawful distribution, return of an unlawful distribution, or for breach of fiduciary duty, including without limitation an action for gross negligence, but excluding any action covered by the provisions of Subsection D of this Section, shall be brought unless it is filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered, ***but in no event shall an action covered by the provisions of this Subsection be brought more than three years from the date of the alleged act, omission, or neglect.***
>
> D. No action for damages against any [officer, director, shareholder, member, manager, general partner, limited partner, managing partner, or other person similarly situated] for intentional tortious misconduct, or for an intentional breach of a duty of loyalty, or for an intentional unlawful distribution, or for acts or omissions in bad faith, or involving fraud, or a knowing and intentional violation of law, shall be brought unless it is filed in a court of competent jurisdiction and proper venue within two years from the date of the alleged act or omission, or within two years from the date the alleged act or omission is discovered or should have been discovered, ***but in no event shall an action covered by the provisions of this Subsection be brought more than three years from the date of the alleged act or omission.***
>
> E. ***The time limitations provided in this Section shall not be subject to suspension on any grounds or interruption*** except by timely suit filed in a court of competent jurisdiction and proper venue.

* * * *

La. Rev. Stat. Ann. § 12:1502 (West Supp. 2016). Louisiana courts characterize § 12:1502 as a "hybrid liberative prescription statute and peremption statute," rather than

a peremptive statute. *Wooley v. Lucksinger*, 14 So. 3d 311, 219 (La. App. 1st Cir. 2008) (explaining why § 12:1502 does not provide for a peremptive period as a matter of law), *reversed in part on other grounds*, 61 So. 3d 507 (La. 2011). In other words, the statute is a prescriptive statute that is subject to time limitations that have peremptive attributes. *Suhren v. Gibert*, 55 So. 3d 941, 947 (La. App. 4th Cir. 2011). Importantly, under § 12:1502, prescription is triggered when a plaintiff discovers or should have discovered the wrongful act, not by proof of damages, which need not be quantifiable or fully incurred.[4] *Robert v. Robert Mgt. Co.*, 164 So. 3d 922, 936 n.25 (La. App. 4th Cir. 2015) (citing *Bailey v. Khoury*, 891 So. 2d 1268, 1276 (La. 2005)).

At the outset, the Court notes that alter ego and civil conspiracy are not causes of action. Alter ego is a theory of liability used to hold a parent entity liable for the actions of its subsidiary. *See Alomang v. Freeport-McMoRan, Inc.*, 811 So. 2d 98, 101 (La. App. 4th Cir. 2002). Civil conspiracy is not an actionable claim under Louisiana law. *Crutcher-Tufts Res., Inc. v. Tufts*, 992 So. 2d 1091, 1094 (La. App. 4th Cir. 2008) (citing *Ross v. Conoco, Inc.*, 828 So. 2d 546 (La. 2002) (explaining that it is the tort that the conspirators agreed to perpetrate and which they actually commit that constitutes the actionable elements of the claim). The Court also notes that PALIC cannot satisfy the elements required for a cause of action grounded on unjust enrichment.[5] Thus, the only

---

[4] Defendants contend that many, if not all, of PALIC's claims are actually subject to shorter prescriptive periods than the three-year period at issue in this motion but that issue is not currently before the Court. (Rec. Doc. 163-1, Defs.' Memo at 1).

[5] The pivotal element in a claim for unjust enrichment under Louisiana law is that there must be no other remedy at law available to the plaintiff. *Baker v. Maclay Props. Co.*, 648 So. 2d 888,

causes of action actually pending in this case for purposes of the § 12:1502 analysis are breach of partnership and fiduciary duty (Count II), fraud (Count III), conversion (Count V), and unfair trade practices (Count VI).

PALIC's claims for breach of partnership/fiduciary duties, fraud, and conversion vis à vis LAC are easily addressed. PALIC and LAC were partners in PANACON, which was a Louisiana partnership. Section 12:1502 is unquestionably implicated, and PALIC concedes as much as to its breach of partnership/fiduciary duties under Count II. (Rec. Doc. 240, Opposition at 6).

The Court is persuaded that PALIC's claims against LAC for fraud and conversion are also covered by the statute. Section 1502(D) expressly extends the statute to claims for intentional tortious misconduct, or for an intentional breach of a duty of loyalty, or for acts or omissions in bad faith, or involving fraud. PALIC's fraud and conversion claims against LAC unquestionably fall into this category of acts.

PALIC argues that § 12:1502(D) does not cover its fraud and conversion claims because Paragraph D should be read not as a standalone paragraph but rather as a prescriptive regime for instances where the actions covered by Paragraph C were done intentionally, in bad faith, or involving fraud. In other words, PALIC construes the entire

---

897 (La. 1995). As demonstrated by PALIC's complaint and this Court's denial of Defendants' Rule 12(b)(6) motion to dismiss, PALIC has remedies at law against both LAC and IHC. Whether or not those causes of action are timely or meritorious is of no moment. *See Garber v. Badon & Ranier*, 961 So. 2d 92, 100 (La. App. 3d Cir. 2008) (citing *La. Nat'l Bank of Baton Rouge v. Belello*, 577 So. 2d 1099, 1102 (La. App. 1st Cir. 1991)). In other words, unjust enrichment does not provide a safety net to cure an injustice or wrong should the legal remedies available to a plaintiff fail.

statute to govern only claims for breach of fiduciary duty whether intentional or unintentional.

Nothing about the structure or text of La. R.S. § 12:1502 supports PALIC's construction of the statute. To the contrary, the lead in language for both paragraphs is identical ("No action for damages against any person listed in Section A of this Section for . . . ") before the specific conduct at issue in each paragraph is recited. Nothing suggests that Subsection C limits the otherwise extremely broad scope of Subsection D. Subsection C expressly excludes actions covered by the provisions of Subsection D. Even the title of the statute, "Actions against persons who control business organizations," suggests broad applicability and does not hint at limiting the statute to breaches of fiduciary duty. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written. La. Civ. Code art. 9. Section 12:1502 is clear and unambiguous in that it applies to all claims in tort between partners.

The question whether La. R.S. § 12:1502 applies to PALIC's unfair trade practices claims against LAC is not as straightforward. Militating in favor of application is that the broadly-worded Subsection D of the statute unqualifiedly applies it to "a knowing and intentional *violation of law*." (emphasis added). The statute does not define "violation of law." But § 1405(A) of Louisiana's Unfair Trade Practices and Consumer Protection Law, 51:1401, *et seq.* ("LUTPA"), states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared *unlawful*." (emphasis added). Assuming that a given

set of facts is sufficiently offensive to be "unlawful,"[6] and therefore plausibly characterizable as a "violation of law," Defendants' contention is that when the LUTPA claim is asserted against a former partner, § 12:1502's time limitations apply the same as they would with a tort claim.

The questions regarding applicability arise because the LUTPA is a statutory scheme with its own prescriptive period in § 51:1409(E) ("The action provided by this section shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action."). In stark contrast to § 12:1502, the LUTPA's prescriptive period has no peremptive attributes of its own so concepts such as continuing tort and the discovery rule may apply to stave off prescription. PALIC argues that Defendants have no case law whatsoever to support their contention that § 12:1502 applies to their LUTPA claims, and that the Legislature could easily have included LUTPA in Subsection D where other causes of action are named.

Both sides rely on the principle that when two statutes deal with the same subject matter but cannot be harmonized or reconciled, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character. *See McGlothlin v. Christus St. Patrick Hosp.*, 65 So. 3d 1218, 1228 (La. 2011) (citing *LeBreton v. Rabito*, 714 So. 2d 1226, 1229 (La. 1998)). PALIC contends that § 51:1409(E) of the LUTPA is the more specific statute with § 12:1502 being the more

---

[6] As the Court explained in its ruling on Defendants' motion to dismiss, LUTPA does not define the specific acts that are "unlawful" so courts must decide on a case-by-case basis what conduct falls within the statute's prohibition. (Rec. Doc. 37 at 10).

general statute, and Defendants contend the exact opposite. Because § 12:1502 deals with causes of action against a specific type of defendant, *i.e.*, persons who control business organizations, Defendants analogize § 12:1502 to other prescriptive/peremptive regimes that apply to specific type of defendants, *e.g.*, doctors and attorneys, regardless of the legal theory involved.

The principles of *Erie v. Tompkins*, 304 U.S. 64 (1938), require a federal court sitting in diversity to apply the law of the state as declared by its legislature or the state's highest court. In the absence of an on-point decision, this Court must make an "*Erie* guess" or prediction as to how the Louisiana Supreme Court would decide the question of whether § 12:1502 trumps the LUTPA's own prescriptive provision. *See Keen v. Miller Envir. Grp., Inc.*, 702 F.3d 239, 243-44 (5th Cir. 2012).

The Court's *Erie* prediction is that Louisiana courts would treat La. R.S. § 12:1502 as the more specific statute when the defendant being sued under the LUTPA is a partner, which is one of the specific corporate individuals identified in Subsection A of the statute. Section 1502 singles out for favorable treatment certain corporate persons who the Legislature has determined should receive greater protection from liability for past acts. Subsection D is broadly written to be inclusive of causes of action not specifically enumerated in the statute, which does not purport to contain an exhaustive list of legal theories. Moreover, it is hard to give much weight to the fact that the statute does not expressly list LUTPA claims as being included in its scope because it is not even clear under Louisiana law that the LUTPA can apply outside the context of competitors and consumers. It is only via another *Erie* guess by this Court that PALIC

has even been allowed to pursue a LUTPA claim in this litigation. (Rec. Doc. 37, 12/20/13 Order and Reasons at 8-9) (discussing the *Cheramie* plurality). Further, it is telling that the Legislature did expressly exempt certain causes of action from the statute's reach, *see* La. R.S. § 12:1502(A), but the LUTPA was not one of them even though the LUTPA predates § 12:1502 by about thirty years. Thus, the Court is persuaded that La. R.S. § 12:1502 applies to PALIC's LUTPA claims against LAC.

**III.**

IHC was not a partner in PANACON so any claims that PALIC has asserted directly and independently, *i.e.*, not premised on alter ego, against IHC are not governed by § 12:1502.[7] Thus, PALIC's claims against IHC for fraud, conversion, and unfair trade practices are unaffected by La. R.S. § 12:1502.

**IV.**

La. R.S. § 12:1502 governs the tort claims and the LUTPA claim asserted by PALIC against LAC. Any liability against LAC under Counts II, III, IV, V, VI, VII, and VIII predicated on acts or omissions occurring prior to July 9, 2010, is barred as a matter of law.

---

[7] In response to PALIC's assertion that its fraud and conversion claims against IHC are not governed by § 12:1502 because IHC was not a partner in PANACON, IHC argued that PALIC has no individual claims directly against IHC because IHC did not own the hotel, did not operate or manage the hotel, and was not a partner in PANACON. (Rec. Doc. 258, Reply at 9). IHC points out that PALIC has put forth no evidence with its opposition to support such as claim.
    In accordance with Defendants' own characterization of their motion, the Court construes the motion as presenting only questions of law as to the scope of La. R.S. § 12:1502. As the Court stated above, § 12:1502 does not govern any claims against non-partner IHC. If Defendants believe that PALIC cannot create an issue of fact as to any direct claim against ICH then eventually they should move for summary judgment on that issue.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment Barring Liability for Any Act or Omission That Occurred Prior to July 9, 2010 (Rec. Doc. 163)** filed by defendants Louisiana Acquisitions Corp. and Inter-Continental Hotels Corp. is **GRANTED IN PART AND DENIED IN PART** as explained above.

May 18, 2016

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE