UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PAN AMERICAN LIFE INSURANCE CO., INDIVIDUALLY AND AS A PARTNER IN PANACON | CIVIL ACTION |
| VERSUS | NO: 13-5027 |
| LOUISIANA ACQUISITIONS CORP. AND INTER-CONTINENTAL HOTELS CORP. | SECTION: "A" (3) |

## ORDER AND REASONS

The following motions are before the Court: **Motion for Partial Summary Judgment (Rec. Doc. 306)** filed by Inter-Continental Hotels Corp.**; Motion for Summary Judgment (Rec. Doc. 308)** filed by Louisiana Acquisitions Corp.; **Motion for Summary Judgment Against Inter-Continental Hotels Corp. (Rec. Doc. 345)** filed by Plaintiff, Pan American Life Insurance Co.; **Motion for Summary Judgment Against Louisiana Acquisitions Corp. (Rec. Doc. 347)** filed by Plaintiff, Pan American Life Insurance Co. ("PALIC"); **Motion to Strike the Declaration of Robert Patterson (Rec. Doc. 367)** filed by Defendants, Inter-Continental Hotels Corp. and Louisiana Acquisitions Corp.

All motions are opposed. The motions, submitted on June 28, 2017 and July 12, 2017, are before the Court on the briefs without oral argument. For the reasons that follow, Defendants' motions are GRANTED with the exception of the motion to strike,

which is MOOT. Plaintiff's motions are DENIED.

**I.[1]**

This is a diversity action for breach of contract, breaches of fiduciary duties owed between partners, fraud, conversion, civil conspiracy, deceptive or unfair trade practices, and unjust enrichment arising out of the parties' operation and management of, and relationship to, the New Orleans Inter-Continental Hotel located in downtown New Orleans (referred to at times as "the Hotel"). (Rec. Doc. 17, SSAC ¶ 1).

PALIC and Louisiana Acquisitions Corp. ("LAC") formed a Louisiana partnership called PANACON on June 4, 1981, for the purpose of designing, building, and operating a luxury hotel in New Orleans. (SSAC ¶ 9). PALIC owned a two-thirds (2/3) interest in PANACON and LAC owned the other one-third (1/3). (*Id.* ¶ 10). The hotel opened in 1983 under the Inter-Continental brand name. *(Id.* ¶ 12). LAC is a wholly-owned subsidiary of Inter-Continental Hotels Corp. ("IHC") and the two entities operate as commonly controlled business entities. (*Id.* ¶¶ 4-5).

The PANACON partnership entered into an Operating and Management Agreement ("the Management Agreement") with IHC to manage the Hotel. (SSAC ¶ 13). Later, LAC became manager of the Hotel pursuant to an assignment from IHC. PALIC claims that over the years LAC and IHC used the Management Agreement as a lucrative vehicle to double-charge or over-charge PANACON for services to the

---

[1] The factual background is taken nearly verbatim from the allegations that Plaintiff made when this lawsuit was filed in 2013. Nothing contained in this factual background shall be construed as being established by the evidence of record.

detriment of the partnership and PALIC, while garnering significant profits for Defendants. PALIC contends that Defendants failed to perform certain obligations owed under the Management Agreement, which inured to Defendants' financial gain but hurt the Hotel's ability to compete as a luxury hotel. PALIC also alleges that Defendants surreptitiously competed against PANACON by operating other hotels in the local market. Thus, according to PALIC, LAC and IHC maximized their profits not through their one-third ownership of PANACON but rather by abusing the Management Agreement — a scheme that produced profits for Defendants regardless of whether the hotel itself was profitable. PALIC complains that Defendants' strategy resulted in PALIC receiving no profits on its investment for years at a time.

In 2005, PALIC began to take steps to sell the underperforming hotel. (SSAC ¶ 40). PALIC alleges a plethora of acts that Defendants are accused of committing in order to thwart the sale of the Hotel, which again was allegedly losing money for PALIC but proving quite profitable to Defendants.

Prior to the January 2013 sale of the Hotel, PALIC became aware of some of the very conduct by Defendants that PALIC is complaining about in this action. (SSAC ¶ 18). According to PALIC, Defendants demanded that PANACON and PALIC execute two documents, a Side-Letter Agreement (Rec. Doc. 24-4, Exhibit C) and a Voluntary Termination Agreement (Rec. Doc. 24-5, Exhibit D) — documents that PALIC describes as including "a purported release" of PALIC's claims for breaches of the Management Agreement and fraud (*Id.* ¶¶ 19-20) — as a condition for their agreement to the pending sale of the Hotel. These documents were executed in December 2012. PALIC contends

that Defendants insisted on the releases because Defendants knew that they had been discovered in their fraudulent scheme and that PALIC was forced to agree to the releases because of economic duress in light of its eagerness to finally sell the unprofitable hotel. (*Id.* ¶¶ 65, 75).

PALIC initiated this action, individually and as a partner in PANACON, against LAC and IHC on July 9, 2013, with a 149 paragraph complaint. Defendants initially responded with a Rule 12(b)(6) Motion to Dismiss (Rec. Doc. 24). On December 20, 2013, the Court granted in part and denied in part that motion, concluding that most of Defendants' arguments could not be resolved on the pleadings (Rec. Doc. 37). After that ruling, PALIC ostensibly had the following remaining claims in this lawsuit: breach of contract (Count I), breach of fiduciary duty (Count II), fraud (Count III), civil conspiracy (Count IV), conversion (Count V), unfair trade practices (Count VI), unjust enrichment (Count VII), and alter ego (Count VIII).

Substantial fact discovery ensued after the Court declined to dismiss the case on the pleadings alone. The record reflects that discovery has not proceeded smoothly. Counsel have appeared for motion hearings before the magistrate judge on ten separate occasions (Rec. Docs. 93, 116, 124, 144, 151, 214, 229, 271, 338, 399). Counsel have appeared in this Court's chambers on numerous separate occasions. Through significant motion practice over the last four years, Defendants have whittled away at Plaintiff's case, narrowing the remaining issues and claims to breach of

fiduciary duty, fraud, conversion, and LUTPA.[2]

Defendants LAC and IHC now move for summary judgment as to all remaining claims. Additionally, Defendants move to strike the declaration of Robert Patterson.[3] PALIC has also filed two motions for summary judgment.

The motions are addressed in turn below.

## II.

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S.

---

[2] In its Order and Reasons addressing Defendants' Motion for Partial Summary Judgment Barring Liability for Any Act or Omission That Occurred Prior to July 9, 2010, the Court explained why PALIC has no cause of action for unjust enrichment, civil conspiracy, or alter ego. (Rec. Doc. 287, Court's Order and Reasons 5/19/16 at 7-8). In that same ruling the Court held that any liability for non-contract claims against LAC based on acts or omissions occurring prior to July 9, 2010, is barred by La. R.S. § 12:1502. A few months later the Court granted Defendants' motion for partial summary as to the Count I breach of contract claim. (Rec. Doc. 303, Court's Order and Reasons 8/2/16).

[3] On August 2, 2016, the Court struck portions of Mr. Patterson's prior declaration after concluding that he impermissibly expressed legal conclusions. (Rec. Doc. 303, Court's Order and Reasons 8/2/16 at 21).

317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

When faced with a well-supported motion for summary judgment, Rule 56 places the burden on the non-movant to designate the specific facts in the record that create genuine issues precluding summary judgment. *Jones .v Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). The district court has no duty to survey the entire record in search of evidence to support a non-movant's position. *Id.* (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1992); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988)).

### III.

### LAC's Motion for Summary Judgment

LAC contends that discovery has confirmed what LAC has been arguing since it first filed its Rule 12(b)(6) motion to dismiss nearly four years ago—that PALIC fully and finally released all of the claims asserted in this lawsuit when it executed the Side-Letter Agreement ("SLA") in exchange for nearly half a million dollars and LAC's cooperation in terminating the Management Agreement before its term expired. LAC contends that discovery has also demonstrated that PALIC has no viable defenses, *i.e.*, fraudulent inducement and economic duress, to the enforceability of that compromise. Even if not

compromised and released, LAC argues that PALIC's remaining claims are prescribed nonetheless or otherwise meritless.

LAC filed its motion for summary judgment in October of last year, and the motion was continued to its current submission date for various reasons. In April of this year, LAC filed a supplemental memorandum in support (Rec. Doc. 342) based on documents that PALIC fought long and hard to avoid producing.[4] These documents, filed under seal, reveal the email communications between PALIC's principals, PALIC's hotel experts, and the attorneys who represented PALIC and PANACON in the weeks leading up to the sale of the hotel and the execution of the SLA. (Rec. Doc. 342-1, Exhibit A—Sealed). LAC contends that these communications demonstrate that PALIC understood without question that it was releasing the claims that it eventually brought in this lawsuit, and that it did so with a full appreciation of the implications of the release. LAC argues that PALIC escaped dismissal at the Rule 12(b)(6) stage by concocting a false litigation narrative that constitutes a colossal fraud upon the Court. LAC contends that PALIC's claims of economic duress and fraudulent inducement have now been exposed as blatant lies that PALIC and its attorneys have pressed for four years in order to keep this case alive.

PALIC and LAC, the two partners of PANACON, executed the SLA for the purpose of establishing their respective rights and duties regarding the upcoming sale of

---

[4] PALIC reiterates its belief that the documents were privileged and that it fought to avoid producing them on that legitimate basis alone. (Rec. Doc. 353, PALIC's Memorandum in Opposition to Motion to Supplement).

the Hotel. (Rec. Doc. 308-4, SLA at 1). To the extent that the SLA contains a release of

claims, the operative paragraph from the SLA is paragraph 6 which reads in relevant

part as follows:

> 6.    <u>Existing Management Agreement</u>. Simultaneously with the closing under the Purchase Agreement, LAC will execute, or cause LAC or other appropriate affiliates thereof to execute, such instruments or documents as may reasonably be required to affirm the termination of the Operating and Management Agreement dated July 2, 1980 between Intercontinental Hotels Corporation and PANACON, as amended ("Existing Management Agreement"). The termination of the Existing Management Agreement would be subject to the resolution of any disputes between PALIC and LAC (and its affiliates), and a release of LAC and its affiliates pursuant to a voluntary termination agreement. ***PALIC and LAC agree that LAC will pay PALIC the amount of $434,636 on or prior to sale of the Hotel in resolution of outstanding disputes and such release of LAC and its affiliates will be for claims related to the Management Agreement and operation of the Hotel, including without limitation those related to (a) matters referenced in letters from PALIC to LAC and its Affiliate dated April 26, 2011, April 27, 2011, and May 10, 2011, and (b) the categories of intercompany charges listed in a spreadsheet provided by PALIC to LAC on December 19, 2012, and such release shall specifically exclude any fraud by LAC and its affiliates, provided that such exclusion for fraud will not apply to claims based upon the intercompany charges referred to in (b) above. . . .***

(Rec. Doc. 308-4, Exhibit 1, 12/21/12 SLA ) (emphasis added).

In considering LAC's arguments as to this paragraph in the context of LAC's Rule

12(b)(6) motion to dismiss, the Court stated as follows:

> The overall impression that one obtains when reading this paragraph is that it commits the parties to do certain things at some point in the future as opposed to contemporaneously with the signing of the Side-Letter Agreement itself. Most interestingly, it refers to a release of claims in conjunction with the Voluntary Termination Agreement. In fact, the Voluntary Termination Agreement contains a release that expressly references paragraph 6 of the Side-Letter Agreement, and tracks the language of the foregoing paragraph 6. This of course is supportive of

PALIC's contention that the Side-Letter Agreement itself does not contain the actual release because the Voluntary Termination Agreement, which PALIC did not sign, contains the release. And it is clear that certain types of fraud claims are excepted from the release. ***On the other hand, PALIC did receive the $434,636 referenced in paragraph 6 of the Side-Letter Agreement so it is clear that PALIC compromised something.*** But the breadth of that compromise presents a mixed question of fact and law that the Court cannot properly resolve on the record, and even if the Court could do that, PALIC is alleging fraud in the inducement as to any settlement agreement that Defendants seek to enforce. None of these issues can be resolved via a Rule 12(b)(6) motion to dismiss.

(Rec. Doc. 37, Court's Order and Reasons dated 12/23/13 at 6-7) (emphasis added).

In defense of LAC's motion for summary judgment, PALIC characterizes the foregoing language from the Court's opinion as a "holding" that the SLA does not contain a release. This mischaracterizes what the Court stated. The Court was explicit in observing that PALIC did compromise (and therefore release) *something* because after all, LAC did pay and PALIC did accept the $434,636.00 payment described in Paragraph 6.[5] Laboring under the standards that govern a Rule 12(b)(6) motion to dismiss, the Court could not determine the scope of that compromise in the only respect that matters—which, if any, of the otherwise valid causes of action asserted in this lawsuit are foreclosed (released) by the compromise. But the Court never suggested that issues as to the scope of the compromise would always be precluded from resolution on the record once the record was developed.

So at the outset, the Court once again rejects PALIC's insupportable position that

---

[5] LAC advises that the actual amount that PALIC received was $446,257.

it released nothing in favor of LAC *and its affiliates.* Paragraph 6 expressly refers to

"resolution of any disputes between PALIC and LAC (and its affiliates)" as part of the

consideration for LAC and its affiliates to terminate the existing Management

Agreement—an agreement that Defendants were contractually entitled to keep in place

for at least another year yet one that PALIC considered a negative when trying to fetch

the best selling price for the hotel. Paragraph 6 then specifically states the agreed-to

monetary consideration ($434,636) that PALIC would receive "in resolution of

outstanding disputes."[6]

Assuming that the compromise was not confected contemporaneously with the

signing of the SLA, *i.e.*, that it was contingent upon the doing of certain things at some

point in the future, it was certainly confected when LAC and its affiliates terminated the

Management Agreement as agreed, and actually paid PALIC the agreed-to monetary

consideration, which PALIC readily accepted and never returned. Throughout the years

of this litigation PALIC has never offered a plausible, credible explanation as to why

LAC would pay PALIC such a significant sum of money if it did not do so in return for a

release. In its Opposition PALIC makes no attempt to reconcile the nearly half million

dollars that it received *in addition to* realizing its ultimate goal of selling the Hotel

unencumbered by the Management Agreement—a feat that it could not have

accomplished without LAC's and IHC's cooperation—with its untenable position that it

---

[6] Paragraph 6 expressly refers to LAC *and its affiliates.* PALIC's proposition that IHC, which is an affiliate of LAC, does not benefit from the release because it did not sign the SLA is without merit. (Rec. Doc. 373 at 7 n.31).

released nothing in exchange for the benefits that it received. It is preposterous to suggest that LAC and IHC were conferring these benefits to PALIC gratuitously.

In support of its contention that the SLA does not contain a release, PALIC posits that the specific release that LAC requested pertained to breaches of the Management Agreement, and that this particular release is included in the Voluntary Termination Agreement, to which PALIC is not a party. PALIC points out that individually it could not have released LAC for claims related to breaches of the Management Agreement because PALIC was not a party to that contract. PALIC contends that this line of argument is confirmed by the Court's ruling that only PANACON could sue for direct breaches of the Management Agreement. (Rec. Doc. 373 at 9).

To be sure, the Voluntary Termination Agreement does contain a release by PANACON because it was a party to the Management Agreement, and therefore would have been the party to release claims for direct breaches of the Management Agreement.[7] That release was part of the consideration that LAC required for agreeing to an early termination of the Management Agreement. But no prudent partner in LAC's position would have paid the consideration that LAC paid without also obtaining a release *from PALIC* because PANACON and PALIC are distinct legal entities, each with their own rights to assert. Importantly, in the years and especially the months leading up to the sale of the Hotel, PALIC both as a partner in PANACON *and individually* was dissatisfied with LAC's performance under the Management Agreement and its handling

---

[7] The release contained in the Voluntary Termination Agreement is not limited to breach of contract claims. (Rec. Doc. 24-5 at 5).

of intercompany charges. PALIC ignores that this lawsuit comprises in large part legal theories intended to compensate PALIC *indirectly* for breaches of the Management Agreement.[8] Paragraph 6 of the SLA does not refer to breach of contract claims but rather to "claims related to" the Management Agreement. If PALIC is correct in asserting that it had no claims related to the Management Agreement to release, then the corollary to that position is that PALIC had no claims related to the Management Agreement to assert when it filed this lawsuit. Thus, as the Court stated nearly four years ago, PALIC clearly compromised, and therefore released, something. PALIC's arguments to the contrary are unconvincing.

As for the question of which of the remaining claims in this lawsuit survive that compromise, the text of Paragraph 6 is express in that PALIC released claims related to the Management Agreement and the operation of the hotel, *including without limitation* the matters referenced in three specific letters that PALIC's CEO sent to LAC in 2011, (Rec. Doc. 24-6), and a spreadsheet of allegedly improper intercompany charges that PALIC sent to LAC just days before the parties executed the SLA. Every grievance contained in the letters—grievances and areas of dissatisfaction undisputedly compromised by PALIC for valuable consideration—have been resurrected in this lawsuit. Likewise, PALIC has attempted to resurrect the dispute over the intercompany charges by raising the specter of fraud—a claim that PALIC expressly agreed to waive as part of the compromise agreement.

---

[8] PALIC also ignores that it filed that lawsuit alleging that it had standing to sue for direct breaches of the Management Agreement.

PALIC argues that even if the SLA contained a release, that release would not foreclose all of PALIC's claims against LAC because Paragraph 6 does not release LAC from liability for breaches of its partnership obligations as a partner in PANACON. To the contrary, Paragraph 6 is broadly worded to encompass all claims related to the Management Agreement and the operation of the Hotel regardless of the legal theory relied upon. Moreover, consideration was paid to resolve the parties' "outstanding" disputes; every claim asserted in this lawsuit was "outstanding" when PALIC executed the SLA. Therefore, regardless of the legal theory being used (breach of fiduciary duty, conversion, or LUTPA), all of PALIC's claims are foreclosed by the compromise memorialized in Paragraph 6 of the SLA.

Even if the SLA were ambiguous as to the scope and breadth of the compromise, the parol evidence of record supports Defendants' position with respect to the compromise.[9] Sealed Supplemental in-globo Exhibit A comprises the email communications between PALIC's principals, PALIC's hotel experts, and the attorneys who represented PALIC and PANACON in the weeks leading up to the sale of the Hotel and the execution of the SLA. (Rec. Doc. 342, Exhibit A). That document unequivocally demonstrates that PALIC understood the significance of Paragraph 6 of the SLA, and that PALIC freely and knowingly provided the release in order to realize its stated

---

[9] PALIC contends that the SLA is so clear and unambiguous that the Court should ignore any extrinsic, parol evidence and conclude that it contains no release. (Rec. Doc. 373 at 9 n.38). But PALIC equivocates as to its position on the clarity of the SLA's release language because PALIC also posits that LAC's motion brings out genuine issues of material fact about the circumstances surrounding any alleged release that foreclose summary judgment. (*Id.* at 7 n.31).

business objective of selling the Hotel. The contemporaneous email communications belie the assertion that the scope and breadth of the release being pressed by Defendants in defense of this lawsuit is broader that what either PALIC understood the release to be or what the parties intended it to be.

PALIC attempts to circumvent the negotiated compromise by accusing LAC and IHC of fraudulently inducing PALIC to execute the release, and by raising the claim that PALIC was under economic duress when it executed the SLA, and therefore had no choice but to release its claims.

Consent is vitiated when it has been obtained by duress of such a nature as to cause a reasonable fear of unjust and considerable injury to a party's person, property, or reputation. La. Civ. Code art. 1959. Age, health, disposition, and other personal circumstances of a party must be taken into account in determining reasonableness of the fear. *Id.* Legal duress sufficient to vitiate consent is determined by applying a subjective as well as an objective standard. *Averette v. Indus. Concepts, Inc.*, 673 So. 2d 642, 644 (La. App. 1st Cir. 1996). Louisiana law provides that a claim of financial straits does not constitute duress. *Aubert v. Entergy Corp.*, 762 So. 2d 288, 291 (La. App. 5th Cir. 2000) (citing *Comeaux v. Entergy Corp.*, 734 So. 2d 105 (La. 1999)).

The Court will assume for purposes of argument that a sophisticated, multi-billion dollar business entity that conducts business with the benefit of counsel from teams of lawyers, accountants, and experts, can avoid a contractual obligation by claiming economic duress—a specious legal proposition unsupported by any legal authority whatsoever. The Court will also assume for purposes of argument that such a party can

rely on the concept of duress to void only the specific portions of a contract that it later deems unfavorable to its interests. This second assumption is an important one because PALIC seeks only to avoid its reciprocal obligations under the release while retaining the full benefit of the contractual promises that Defendants fulfilled in order for PALIC to realize its goal of selling the Hotel at the best price.[10]

But even with the benefit of these dubious legal assumptions, the doctrine of economic duress does not apply in this case to relieve PALIC of the bargain that it struck with Defendants. PALIC had been trying to sell the Hotel for years because it wanted out of the hotel business and because it considered the Hotel to be an underperforming asset. PALIC needed Defendants' cooperation in the sale because Defendants were contractually entitled to keep the Management Agreement in place for another year—a prospect that was unattractive to the interested buyer. In light of the ongoing questions and complaints that PALIC had been raising about intercompany charges and LAC's management of the hotel, Defendants understandably demanded a release of claims in exchange for their cooperation in prematurely terminating the Management Agreement. Contrary to PALIC's characterization of events, there was nothing nefarious in Defendants having conditioned their willingness to terminate their contractual rights on obtaining a release in their favor. As a matter of law the threat of exercising a contractual or legal right does not constitute duress. La. Civ. Code art.

---

[10] In fact, PALIC's executives were extremely pleased with the sale price. (Rec. Doc. 308-10, Exhibit 7).

1962.

Again, the contemporaneous email communications contained in Sealed
Supplemental in-globo Exhibit A unequivocally demonstrate that PALIC understood the
significance of Paragraph 6 of the SLA. Those communications demonstrate that PALIC
was apprehensive at the prospect of releasing any potential claims given that the fast-
approaching closing on the Hotel would preclude PALIC from fully investigating what it
was being asked to release. But the communications also demonstrate that PALIC
made an informed decision to forgo any further investigation or negotiation with respect
to the release in order to expeditiously move forward with the sale of the Hotel. To do so
PALIC made a deliberate decision to release all outstanding claims, while knowingly
risking that some of those claims might be more substantial that what PALIC
understood them to be at the time.

PALIC's attempt to characterize itself as a powerless victim in its dealings with
Defendants is ludicrous. Notwithstanding PALIC's protestations to the contrary, PALIC
had the option of continuing to negotiate the release with Defendants and continuing to
investigate what it believed to be improper intercompany charges. Of course by doing
so such action might have delayed the sale of the Hotel and cost PANACON its buyer.
PALIC could have held on to its interest in the underperforming Hotel without suffering
financial ruin or severe harm.[11]  But PALIC, in consultation with its attorneys,

---

[11]  PALIC does not dispute LAC's contention that the Hotel was a minimal part of PALIC's
investment portfolio.

consultants, and accountants, weighed all of its options and made a considered and informed, financial and business decision to do what it believed to be in its best economic interest, which was to sell the Hotel at the excellent price offered and receive nearly a half million dollars from Defendants to resolve their outstanding claims.[12] *See* Sealed Supplemental in-globo Exhibit A. PALIC did not suffer economic duress sufficient to vitiate consent simply because it was presented with an opportunity so financially attractive that it could not pass it up. This contention is completely without merit and does not relieve PALIC of the confines of the compromise that it freely entered into with Defendants.

PALIC's argument that it should be relieved of the release because LAC fraudulently induced PALIC to release its claims by falsely misrepresenting the amount of the intercompany overcharges is equally without merit.[13] None of the emails and deposition testimony that PALIC considers to be probative of fraud even remotely create an issue of fact that Defendants misrepresented anything to PALIC regarding the

---

[12] Under the circumstances PALIC would have been foolish to forego the sale of the Hotel and the nearly half million dollar payment from Defendants in order to continue squabbling over intercompany charges. Defendants make an excellent point that PALIC received considerably more for its claims by settling them for nearly half a million dollars than PALIC ever could have hoped to obtain in the courts. (Rec. Doc. 308-1 at 18). Thus, in addition to all of the other weaknesses in PALIC's claims, PALIC cannot even plausibly claim that it was unjustly underpaid for compromising its claims.

[13] There are three basic elements to an action for fraud against a party to a contract: (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to (a cause of) the contract. *Shelton v. Standard/700 Assocs.*, 798 So. 2d 60, 64 (La. 2001).

amount of the intercompany charges.[14]  But even if Defendants had affirmatively

understated the amount of the charges, PALIC fails to create an issue of fact that

Defendants' "misrepresentation" influenced one way or the other PALIC's decision to

acquiesce to the demand for a release of claims. Again, Sealed Supplemental in-globo

Exhibit A makes unequivocally clear that PALIC knew exactly what it was risking by

signing the release without looking further into the intercompany charges. PALIC's

principal who signed the SLA on behalf of PALIC admitted that he did not read

Paragraph 6 of the SLA before signing it. (Rec. Doc. 308-5, Exhibit 2 at 283-85).

PALIC's hotel consultant Jerry Carlisle had originally estimated the overcharges to be

around $2 million dollars so PALIC was aware that with further investigation it might be

able to support a demand for more money from Defendants in compensation of the

intercompany charges. But PALIC's singular goal was to close on the sale of the Hotel

without delay, so if Defendants did misrepresent anything, PALIC knowingly turned a

blind eye to it in exchange for Defendants' cooperation in selling the Hotel at a great

price and a quick half million dollars in consideration.

Simply. four years of litigation and the completion of exhaustive discovery has

made clear that the SLA constitutes a compromise between the partners that

extinguished all "outstanding disputes" between them, except as specifically carved out

---

[14] Of course, even assuming that Defendants fraudulently mispresented the amount of the improper charges, PALIC agreed to waive claims of fraud related to the allegedly improper charges. Paragraph 6 of the SLA is explicit on this point.

therein for fraud unrelated to the disputed charges.

In that vein, PALIC argues that even if the SLA contained a release, that release would not foreclose claims based on LAC's intentional acts of fraud unrelated to the improper charges. (Rec. Doc. 373 at 9). Therefore, according to PALIC, even if there was a release, PALIC would still be able to assert its claims for breach of fiduciary duty, breach of its duty to contribute, conversion, and fraud. (*Id.* at 10).

Assuming that PALIC has any claims that escape the broad reach of the SLA's release, those claims are prescribed. PALIC has used this litigation to seek vindication over numerous points of disagreement between PALIC and LAC during the course of the parties' years-long relationship. But the facts giving rise to every grievance that PALIC has raised, whether related to competing hotels, the reluctance to renovate, the duty to contribute capital, or the demand for an extended management agreement were known to PALIC more than a year before this action was filed.[15] PALIC's casual and repeated use of the term "fraud" to describe virtually all of Defendants' conduct in order to either avoid the release in the SLA or to obtain a longer prescriptive period is unavailing. In fact, four years of discovery has revealed no actionable fraud in this case by LAC and its affiliates.[16]

---

[15]  To be clear, the Court is not suggesting that these grievances, some of which the Court has already rejected in prior rulings, are actionable under any legal theory.

[16]  For instance, aside from fraud related to the improper charges—which was expressly released in the SLA—PALIC denounces as "fraud" the fact that LAC seemingly led PALIC on as to its willingness to renovate the hotel. Even if this conduct were fraudulent in nature, PALIC was aware of it no later than April 27, 2011 when it was inadvertently copied on the Solomons email. (Rec. Doc. 308-21, Exhibit 18).
    Moreover, this Court is now persuaded that no claim asserted in the case is actionable

In sum, LAC is entitled to judgment as a matter of law on all of PALIC's remaining claims. The motion for summary judgment filed by LAC is GRANTED as to PALIC's remaining claims for breach of fiduciary duty, fraud, conversion, and LUTPA.

## IV.

## IHC's Motion for Summary Judgment

IHC moves for summary judgment on all remaining claims. Because the underlying claims against LAC are being dismissed on summary judgment, PALIC's contention that IHC was the alter ego of LAC or that IHC was a coconspirator to LAC's fraudulent conduct is moot. IHC is not derivatively liable for any claims asserted against LAC.

Furthermore, PALIC has failed to establish that it has any basis to assert direct claims against IHC. IHC was LAC's parent entity. IHC owed PALIC no contractual duties. IHC was not a partner in PANACON. IHC owed PALIC no legal duties upon which to premise a tort claim. Moreover, as an affiliate of LAC, IHC benefits from the release contained in Paragraph 6 of the SLA. IHC is entitled to judgment as a matter of law on all of PALIC's remaining claims. The motion for summary judgment filed by IHC is GRANTED.

## V.

## Defendants' Motion to Strike

Defendants' Motion to Strike the Declaration of Robert Patterson is DENIED AS

---

under LUTPA. Therefore, under any applicable prescriptive period, the LUTPA claims lack merit.

MOOT.

## VI.

## PALIC's Motions for Summary Judgment

PALIC's Motion for Summary Judgment Against Inter-Continental Hotels Corp. and Motion for Summary Judgment Against Louisiana Acquisitions Corp. are DENIED.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Partial Summary Judgment (Rec. Doc. 306)** filed by Inter-Continental Hotels Corp. and the **Motion for Summary Judgment (Rec. Doc. 308)** filed by Louisiana Acquisitions Corp. are **GRANTED**. PALIC's complaint is **DISMISSED WITH PREJUDICE** in its entirety. A judgment in favor of Defendants will be entered accordingly;

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment Against Inter-Continental Hotels Corp. (Rec. Doc. 345)** and **Motion for Summary Judgment Against Louisiana Acquisitions Corp. (Rec. Doc. 347)** filed by Plaintiff, Pan American Life Insurance Co. are **DENIED**;

**IT IS FURTHER ORDERED** that the **Motion to Strike the Declaration of Robert Patterson (Rec. Doc. 367)** filed by Defendants, Inter-Continental Hotels Corp. and Louisiana Acquisitions Corp. is **DENIED AS MOOT**.

August 18, 2017

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE