UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PAN AMERICAN LIFE INSURANCE COMPANY | CIVIL ACTION |
| VERSUS | NO: 13-5027-WBV-DMD |
| LOUISIANA ACQUISITIONS CORP., ET AL. | SECTION: "D"(3) |

## ORDER AND REASONS

Before the Court is the Motion for Partial Summary Judgment (R. Doc. 462),[1] filed by the defendants, Inter-Continental Hotels Corporation ("IHC") and Louisiana Acquisitions Corporation ("LAC"). Also before the Court is the Motion for Summary Judgment or in the Alternative, Motion for Partial Summary Judgment Regarding Attorneys' Fees (R. Doc. 469),[2] filed by Plaintiff Pan American Life Insurance Company ("PALIC"). Each motion is opposed.

I.   Factual Background

This is a diversity action for claims arising out of the parties' operation and management of, and relationship to, the New Orleans Inter-Continental Hotel

---

[1] *See* R. Doc. 478 for the Response in Opposition.
[2] *See* R. Doc. 482 for the Response in Opposition.

located in downtown New Orleans. For the sake of brevity, the Court will not reiterate the factual background discussed at length in the Court's August 21, 2017 Order[3] and the Fifth Circuit's January 3, 2019 Order.[4] In the August 21, 2017 Order, this Court held that the Side Letter Agreement between PALIC and the defendants was a full release of claims, stating that "four years of litigation and the completion of exhaustive discovery has made clear that the SLA constitutes a compromise between the partners that extinguished all 'outstanding disputes' between them . . . ."[5] The Court dismissed with prejudice PALIC's complaint in its entirety and entered judgment in favor of the defendants.[6] PALIC appealed to the Fifth Circuit, which affirmed this Court's ruling.[7] The case remained closed pending the outcome of the appeal without prejudice to the defendants' right to pursue their counterclaims after the Fifth Circuit's mandate was issued.[8] The case has since been reopened for the Court to decide the counterclaims.[9]

The defendants assert counterclaims for bad faith breach of contract, breach of fiduciary duty, fraud in the inducement, negligent misrepresentation, and detrimental reliance. The parties have submitted cross motions for summary

---

[3] *See* R. Doc. 415.
[4] *See* R. Doc. 453-1.
[5] R. Doc. 415, pp. 18-19.
[6] *See* R. Doc. 415.
[7] *See* R. Doc. 453-1.
[8] *See* R. Doc. 444.
[9] *See* R. Docs. 454, 455.

judgment on the issues of PALIC's liability and whether the defendants are entitled to damages, specifically attorneys' fees.[10]

II. Legal Standard

Summary judgment is proper if the movant shows there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[11] If the movant shows the absence of a disputed material fact, the non-movant "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."[12] The Court views facts and draws reasonable inferences in the plaintiff's favor.[13] The Court neither assesses credibility nor weighs evidence at the summary judgment stage.[14]

III. Analysis

The defendants assert that they are entitled to a liability judgment as a matter of law on their counterclaims. The defendants believe that "the evidence in the existing record establishes that PALIC induced LAC to give up valuable management and ownership rights, sell the Hotel, and pay PALIC nearly half a million dollars in return for PALIC's agreement to compromise and release all outstanding disputes between the parties."[15] The defendants contend that PALIC's actions forced them to defend

---

[10] *See* R. Docs. 462 and 469.
[11] *See* FED. R. CIV. P. 56(a).
[12] *McCarty v. Hillstone Restaurant Grp., Inc.*, 864 F. 3d 354, 357 (5th Cir. 2017).
[13] *See Vann v. City of Southaven, Miss.*, 884 F. 3d 307, 309 (5th Cir. 2018).
[14] *See Gray v. Powers*, 673 F. 3d 352, 354 (5th Cir. 2012) (internal citation omitted).
[15] R. Doc. 462-3, p. 1.

themselves against claims they already paid to settle, requiring considerable cost, time, and resources.

This Court has already determined that the Side Letter Agreement contained a valid and binding compromise and release, encompassing the claims brought by PALIC in this action.[16] The defendants argue there is ample support for its claim that PALIC fraudulently induced them to enter into the Side Letter Agreement.[17] PALIC rejoins that it had not decided to proceed with a lawsuit when it entered into the Side Letter Agreement.

Damages, measured in costs and attorneys' fees, allegedly amount to millions of dollars as a result of PALIC's actions.[18] PALIC asserts that these kinds of damages require a contract or statutory provision that the Louisiana Civil Code articles relevant to this action do not provide for. Attorneys' fees are recoverable "only if they are authorized by statute or contract. . . . A breach of contract action does not fall within one of the limited exceptions to the general rule; if the parties fail to expressly provide an obligation to pay attorney's fees, the law will not imply one."[19] Awarding

---

[16] *See* R. Doc. 415.
[17] *See* R. Doc. 462-3.
[18] *See id.*, p. 7.
[19] *Homestead Ins. Co. v. Guarantee Mut. Life Co.*, 459 F. App'x 398, 404-405 (5th Cir. 2012) (internal citations omitted). *See Chauvin v. La Hitte*, 85 So.2d 43, 45 (La. 1956). ("On numerous occasions this court has said that ordinarily attorney's fees are not assessable as an item of damages unless provided for by law or by contract. The clear import of the language of the opinions is that no award of them can be made if not so particularly authorized."). *See Theriot v. State Farm Mut. Automobile Ins. Co.*, 2019 WL 1320009 (W.D. La. March 22, 2019) (stating "Under Louisiana law, attorneys' fees generally are not recoverable unless authorized by statute or contract. The Fifth Circuit has explained, '[i]t is beyond peradventure that, under Louisiana law, attorney's fees are recoverable only if they are authorized by statute or by contract.'" (internal citations omitted)). *See Johnson v. Bayshore Towers, L.L.C.*, 2006 WL 8432429 (M.D. La. March 24, 2006) ("Under Louisiana law, attorney's fees are recoverable only if provided for by statute or contract.").

attorneys' fees is exceptional and penal in nature, and attorneys' fees statutes are construed strictly.[20] Attorneys' fees are awarded to discourage a particular activity or activities on the part of the other party, not to make the injured party whole.[21] "The award of attorneys' fees is left to the sound discretion of the trial court, which will not be reversed on appeal unless that discretion was clearly abused."[22]

In determining whether the defendants are entitled to attorneys' fees, the Court examines whether they have established that they are legally entitled to such an award by virtue of any statute or contract. There is no contractual provision to support the defendants' claim for attorneys' fees, so the Court must determine whether relevant statutory law authorizes such an award under the facts of this case.[23] PALIC moves for judgment as a matter of law, claiming there is no statutory provision permitting the defendants' recovery of attorneys' fees.

The defendants cite several Louisiana Civil Code articles, namely articles 1994, *et seq.* However, these articles do not expressly authorize an award of attorneys' fees. Under Louisiana law, attorneys' fees "characterized as breach of contract damages are not compensable under Article 1994 and its corresponding statutes."[24] Therefore, they cannot recover attorneys' fees, even if the defendants prove their claim for breach of contract.

---

[20] *See Homestead Ins. Co. v. Guarantee Mut. Life Co.*, 459 F. App'x 398, 405 (5th Cir. 2012) (internal citations omitted).
[21] *See Benton v. Clay*, 48245 (La. App. 2 Cir. Aug. 7, 2013) 123 So. 3d 212, 225.
[22] *1100 South Jefferson Davis Parkway, LLC v. Williams*, 2014-1326 (La. App. 4 Cir. May 20, 2015) 165 So. 3d 1211, 1220.
[23] *See David Y. Martin, Jr., Inc. v. Heublein, Inc.*, 943 F. Supp. 637, 643 (E.D. La. 1996).
[24] *Homestead Ins. Co. v. Guarantee Mut. Life Co.*, 459 F. App'x 398, 405 (5th Cir. 2012).

The defendants also attempt to recover attorneys' fees under the theory of fraud. They argue that "A party that has suffered a loss due to fraud is entitled to rescission and/or damages and attorneys' fees," and cite Louisiana Civil Code article 1958 as support.[25] The defendants clarify that they do not seek rescission of the contract, "Rather, [we] seek recovery of all damages incurred as a result of PALIC's fraudulent breach of the Side Letter Agreement, including, but not limited to, attorneys' fees, costs and expenses."[26] In Louisiana, "[f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other."[27] It may result from silence or inaction.[28] The elements of a claim for intentional misrepresentation and a claim for fraudulent inducement are (1) misrepresentation of a material fact; (2) made with intent to deceive; and (3) causing justifiable reliance with resultant injury.[29] The defendants argue that PALIC fraudulently entered into the Side Letter Agreement, such that the defendants are entitled to attorneys' fees.

PALIC contends that Louisiana Civil Code article 1958 does not expressly authorize an award for attorneys' fees and that under current jurisprudence, such an award cannot be made. PALIC discusses *Benton v. Clay* as support. In that case, a winning land auction bidder, Ms. Benton, sued her joint purchaser, Mr. Clay, alleging

---

[25] R. Doc. 462-3, p. 10. "The party against whom rescission is granted because of fraud is liable for damages and attorney fees." La. Civ. Code art. 1958.
[26] R. Doc. 462-3, p. 10.
[27] La. Civ. Code art. 1953.
[28] *See id.*
[29] *See Davis v. Karl*, 2010 WL 3312587, at *3 (E.D. La. Aug. 19, 2010) (citing *Kadlec Med. Ctr. v. Lakeview Anesthesia Assoc.*, 527 F.3d 412, 418 (5th Cir. 2008)).

that he intentionally made misrepresentations regarding her ability to participate in the purchase of land when the Mr. Clay completed the transaction without Ms. Benton's knowledge. The Louisiana Second Circuit Court of Appeal stated, "Although the record is clear that [the defendant's] conduct was both fraudulent and in bad faith, current Louisiana law simply does not allow for an award of attorney's fees."[30] The court noted that

> it is inequitable that a party can be awarded attorney fees when a contract is rescinded on the basis of fraud [*see* La. Civ. Code art. 1958], but a party who breaches an obligation in bad faith and in a fraudulent manner escapes liability for attorney fees. This is a matter that should be addressed by the legislature.

*Benton v. Clay*, 48245 (La. App. 2 Cir. Aug. 7, 2013) 123 So. 3d 212, 225 n.6. The Louisiana Supreme Court held in *Stutts v. Melton*, decided two months after *Benton v. Clay*, that the plaintiffs were entitled to attorneys' fees under Louisiana Civil Code article 1958, where a reasonable factual basis existed for the trial court's finding that the defendants committed fraud by willfully misrepresenting on a Residential Property Disclosure Statement that the home had a roof free of defects and the plaintiffs did not seek a rescission of the purchase agreement:

> Surely, the legislature did not intend the victim of fraud to go uncompensated for attorney fees, or for that matter, any damages at all, unless he seeks rescission of the entire contract. And, if La. C.C. art. 1958 is interpreted to mean that the plaintiff is only entitled to damages and not attorney fees, then the fraudulent defendant is essentially being treated as a good faith obligor, who is only liable for damages that were

---

[30] *Benton v. Clay*, 48245 (La. App. 2 Cir. Aug. 7, 2013) 123 So. 3d 212, 225. "In the present case, the plaintiff has not established that she was legally entitled to attorney fees by virtue of any statute or contract. Although the record is clear that Mr. Clay's conduct was both fraudulent and in bad faith, current Louisiana law simply does not allow for an award of attorney fees. Therefore, we are constrained to find that the trial court erred in making an award of attorney fees in this matter." *Id.*

> foreseeable at the time the contract was made. La. C.C. art. 1996. This is contrary to law as "[i]t should be clear that in Louisiana the liability of an obligor who committed fraud in failing to perform his obligation, rather than just acting in bad faith, would, for greater reasons, be at least as extensive as the liability of an obligor in bad faith." Saul Litvinoff, 6 Louisiana Civil Law Treatise: The Law of Obligations, Part II, Putting in Default and Damages, § 5.20, p. 133 (1999). Further, in our view, the intent of the legislation providing attorney fees when the obligor has committed fraud is to punish the fraudulent conduct, regardless of whether the obligee seeks rescission of the contract.

*Stutts v. Melton*, 130 So. 3d 808, 814-15 (La. 2013). The Court reasoned that to provide an equitable remedy for the plaintiffs, "it is reasonable and just to assume the legislature intended at least the same type of damages for fraud where rescission of the entire sale is not sought."[31] IHC and LAC cited this case in support for their contention that they are entitled to attorney's fees. PALIC rejoins that *Stutts* and numerous other cases cited by the defendants are redhibition cases, thus distinguishable from the facts at hand. After a careful review of the record and applicable law, however, the Court finds that the legal framework and analysis put forth by the Louisiana Supreme Court in *Stutts* applies to this action.

PALIC contends that *Stutts* has been interpreted narrowly, citing *J & L Family, L.L.C. v. BHP Billiton Petroleum Properties (N.A.), L.P.* as support. In that case, there was no contract at issue, but the parties' relationship was controlled by statute such that the defendant was required to pay the plaintiff its pro rata share of the proceeds from the sale of oil and gas extracted from two drilling units.[32] In that

---
[31] *Id.* at 815.
[32] *See J & L Family, L.L.C. v. BHP Billiton Petroleum Properties (N.A.), L.P.*, 293 F. Supp. 3d 615 (W.D. La. Feb. 6, 2018). *See Anderson v. Moreno Air Conditioning, Inc.,* 2014-27 (La. App. 3 Cir. June 4, 2014) 140 So. 3d 841.

case, the court stated, "In the only case to have applied *Stutts* to new facts, the Louisiana Third Circuit held that *Stutts* did not apply to fraud in the context of a 'verbal month-to-month lease,' implicitly limiting the reach of *Stutts* to contracts of sale."[33] PALIC argues that the alleged fraud is in the Side Letter Agreement, not the sale of the Hotel to a third party.[34] IHC and LAC respond by arguing that the Louisiana Supreme Court's holding in *Stutts* was not limited to "sale contracts" and that *Stutts* has not been interpreted narrowly: "Indeed, [*Stutts*] has been recognized, endorsed, adopted, and applied to award attorneys' fees absent rescission in cases involving, among other things, the breach of a release."[35]

The defendants cite a more recent case, *Spurgeon v. Leleaux*, where the plaintiff made claims for fraud, breach of a settlement agreement, and breach of a release and indemnity agreement.[36] The Western District of Louisiana found there were numerous instances where the defendants engaged in fraud and that the plaintiff was entitled to attorneys' fees.[37] *Spurgeon* discussed *Stutts*, stating,

> The Louisiana Supreme Court has indicated that a plaintiff who has been defrauded in the performance of a contract is entitled to damages, including attorney's fees. *Stutts v. Melton*, 2013-C-0557 (La. 10/15/13), 130 So.3d 808. In *Stutts*, the Louisiana Supreme Court determined whether attorney's fees are only available in a fraud case where the plaintiff seeks rescission of the contract. After a detailed analysis, the Court determined that attorney's fees are available to the plaintiff who seeks damages from breach of contract based on fraud, the rationale being that when an obligor has committed fraud, the Louisiana Civil Code intends to punish the fraudulent conduct regardless of whether the

---

[33] 293 F. Supp. 3d 615, 622 (W.D. La. Feb. 6, 2018).
[34] *See* R. Doc. 469-6, p. 14.
[35] R. Doc. 482, p. 4.
[36] *See Spurgeon v. Leleaux*, 2019 WL 138388, at *9-10 (W.D. La. Jan. 8, 2019).
[37] *See id.*, at *10.

> plaintiff (obligee) seeks rescission of the contract or damages flowing from a fraudulent breach.

*Spurgeon v. Leleux*, 2019 WL 138388, at *9-10 (W.D. La. Jan. 8, 2019). The court found that there were numerous instances where the defendants engaged in fraud.[38] Therefore, the court held that the plaintiff was entitled to judgment against certain the defendants and awarded damages, including attorneys' fees.[39]

Although this Court recognizes the holdings in *J & L Family, L.L.C. v. NDP Billiton Petroleum Properties (N.A.), L.P.* and the related Louisiana Third Circuit case, *Anderson v. Moreno's Air Conditioning, Inc., et al.*, those cases involve completely different facts—a quasi-contract relationship regarding minerals and a verbal month-to-month lease, respectively—than the action at hand—a release agreement. The Court finds that the facts at hand align more closely with those of *Spurgeon*. Therefore, the Court finds that the defendants may recover damages, including attorneys' fees, if they prove that PALIC engaged in fraud.

IHC and LAC contend that the record establishes that PALIC was inducing the defendants to relinquish rights and pay money in return for a comprehensive release that PALIC had no intention of honoring. In support, the following email from George J. Fowler, III to Wade Webster, Jose Suquet, and Norman C. Sullivan, Jr., copying Jerry Carlisle and Frank Varela on Tuesday, December 18, 2012, at 7:24 a.m., states, "We have been quietly working on a complaint to be filed after the sale as instructed together with an opinion letter on how to handle the claim. Somehow IHG learned of

---
[38] *Id.*
[39] *Id.*

Pan American's intentions. I do not think this demand is coincidental. We need to discuss."[40] An additional email from Wade Webster, although it is unclear who the email was sent to, was sent on December 20, 2012 at 5:49 a.m., the day before the Side Letter Agreement was executed. That email states, "Please advise Jerry and I as to the strategy that you want to pursue, or the communication to send to IHG advising that PALIC does not want to release IHG and requesting that IHG proceed with the sale. . . . If IHG rejects the request to remove the release language, then at least you will have the hard evidence for any litigation."[41] There is also an email in the record from Wade Webster's assistant, sent to Jose Suquet, copying Pat Fraizer, Frank Varela, Jerry Carlisle, and Rudy Revuelta on August 15, 2012, at 4:46 p.m., months before the Side Letter Agreement was executed. That email discusses Louisiana Rules of Professional Conduct regulating against a lawyer representing a client and strategies to "minimize any claim by IHG that [the law firm Fowler, Rodriguez, Vales-Fauli] was its counsel." The email begins, "Following our conference on July 13th, we researched the issue whether a conflict of interest might arise if our Firm represents PANACON, then is retained on behalf of Pan-American Life Insurance Company to sue the Intercontinental Hotel Group ("IHG"), or Louisiana Acquisitions Corp.,"[42] and continues with a full analysis of the issue of legal representation for a future suit.[43]

---

[40] *See* R. Doc. 462-5.
[41] *See* R. Doc. 462-8.
[42] PANACON is a partnership formed between PALIC and LAC to build and operate a hotel in downtown New Orleans.
[43] *See* R. Doc. 462-6.

The defendants argue that LAC would not have agreed to the sale of its interest in the Hotel and LAC would not have paid PALIC $434,636 had it known of PALIC's intention to sue the defendants after the sale.[44] The defendants believe that the record unequivocally proves that PALIC had no intention of honoring the Side Letter Agreement.

PALIC asserts that there is a genuine issue of material fact as to whether PALIC acted fraudulently or maliciously at the time of signing the Side Letter Agreement or when PALIC filed suit. PALIC claims that at the time it signed the documents, it had not decided to bring this suit.[45] PALIC directs the Court's attention to an email that states, "Just spoke to Jose and he just wants to close. We can talk about a claim after we sell and just deal with whatever release language IHG demands after closing if there is a decision to even make a claim."[46] Therefore, PALIC contends, "The fact that PALIC was still reviewing whether there was a basis to file suit shows that there was no fraudulent or malicious predetermination to dishonor the release when PALIC signed the [Side Letter Agreement.]"[47] PALIC states that the basis for its suit against LAC was the mistaken belief that the release in the Side Letter Agreement was unenforceable. The plaintiff briefly argues that it conducted "an intervening investigation over six months . . . prior to PALIC deciding to file suit[.]"[48] PALIC believes that the evidence is insufficient to prove fraud. The Court is not convinced

---

[44] *See* R. Doc. 462-3, p. 4.
[45] *See* R .Doc. 478, pp. 2-4.
[46] R. Doc. 478, p. 3.
[47] *Id.*
[48] *Id.*, at p. 8.

that the mere lapse of time between signing the agreement and suing the defendants shows a lack of intent to sue when the emails in the record reveal PALIC's true intent.[49] This argument is made weaker by the idea that six months is not a relatively short amount of time to investigate, draft a 42-page complaint, and file a significant lawsuit against the defendants over claims that PALIC formerly released.[50] Also, the sole email produced by PALIC in support of its argument of lack of intent to sue does not overcome the overwhelming proof of PALIC's intent to deceive the defendants to gain an unjust advantage.[51]

The Court finds, in fact, that there is no genuine issue of material fact, and that the evidence clearly supports that PALIC engaged in fraud by willfully misrepresenting or suppressing the truth of its intention not to abide by the Side Letter Agreement and its intention to sue the defendants after the sale of the Hotel. The Court finds that PALIC entered into the Side Letter Agreement with the purpose of deceiving the defendants and with no intention of performing its obligations. The Court believes that, although the defendants do not seek rescission of the contract, they would be nonetheless entitled to rescission based on PALIC's actions. Therefore, the Court finds that the defendants have proven their claim for fraud and are entitled to damages, including attorney's fees. It is not appropriate to determine the extent of those damages at this juncture in the litigation.

---

[49] *See* R. Docs. 462-5, 462-6, 462-7, and 462-8.
[50] "The contention that PALIC 'immediately' sued Counterclaimants is simply incorrect. The SLA was signed on December 21, 2012. PALIC did not file suit until July 9, 2013." *See* R. Doc. 478, p. 8.
[51] *See* R. Docs. 462-5, 462-6, 462-7, and 462-8.

PALIC cites *Arete Partners, L.P. v. Gunnerman*, 594 F.3d 390 (5th Cir. 2010), as support for the contention that its mistaken or flawed interpretation of the Side Letter Agreement, standing alone, is not evidence of fraudulent intent.[52] The Fifth Circuit found that the evidence was insufficient to support a finding of fraud, stating that the defendant's conduct during pre-trial proceedings, including discovery skirmishes, possible discovery abuses, or other pre-trial conduct that was displeasing to the judge was not sufficient evidence to show that the defendant did not intend to perform the settlement agreement.[53] In finding that PALIC is liable for fraud, the Court does not rely on the discovery abuse alleged by the defendants. The Court finds that the emails discussed above evince PALIC's fraudulent intent at the time of the Side Letter Agreement.

The Court also finds that the defendants, for reasons discussed above, engaged in a bad faith breach of contract. However, attorneys' fees are not recoverable under the breach of contract articles.[54] Because the Court has found PALIC liable for fraud and found that the defendants are entitled to damages, including attorneys' fees, the Court need not decide liability on the defendants' other claims.

Accordingly,

---

[52] *See* R. Doc. 478, p. 5.
[53] *See Arete Partners, L.P. v. Gunnerman*, 594 F.3d 390,398 (5th Cir. 2010).
[54] "An obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform." La. Civ. Code art. 1997. *See Sher v. Lafayette Ins. Co.*, 988 So. 2d 186, 201 (La. 2008) (stating that attorneys' fees are not recoverable under article 1997).

IT IS HEREBY ORDERED that the defendants' Motion for Partial Summary Judgment (R. Doc. 462) is GRANTED;

IT IS FURTHER ORDERED that the plaintiff's Motion for Partial Summary Judgment Regarding Attorneys' Fees (R. Doc. 469) is DENIED.

New Orleans, Louisiana, this the 7th day of January, 2019.

**WENDY B. VITTER**
**UNITED STATES DISTRICT JUDGE**